

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00155-CV

IN THE INTEREST OF A.S., H.C., AND B.H., CHILDREN

On Appeal from the County Court at Law No. 1
Randall County, Texas
Trial Court No. 70,866-L1, Honorable Jack M. Graham, Presiding

September 5, 2018

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

T.H., father of B.H., appeals the termination of his parental rights to B.H. M.B., mother of B.H., A.S., and H.C., also appeals the termination of her parental rights. We affirm.

*T.H.'s appeal*

T.H. (Father) appeals from the order terminating his parental rights to B.H. and asserts one issue. Its nature is somewhat vague, though. As illustrated by the summary of his argument, he believes that the "trial court erred by continuing to allow [the State] to proceed with termination after Appellee [sic] substantially completed his service plan." Section 161.001(b)(1)(O) of the Texas Family Code was one of the statutory grounds

alleged by the State as warranting termination. Per that statute, termination may occur when a parent fails to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(O) (West Supp. 2017). Often the court orders encompassed within § 161.001(b)(1)(O) obligate the parent to perform or undergo various services needed to help the parent gain acceptable parenting skills. Given this, we construe Father's argument as attacking termination under § 161.001(b)(1)(O) because the court should have afforded him more time to finish court ordered services.

The problem comes, however, in the narrowness of his argument. That is, the trial court ordered termination on several statutory grounds. They included those found at § 161.001(b)(1)(D), (E), and (L) of the Family Code. None of them encompass the performance of a court ordered service plan. More importantly, Father did not attempt to argue that the trial court lacked evidentiary or legal basis to apply them at bar. And, since only one predicate finding under § 161.001(1)(b) is needed to support termination, *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003), we cannot say that Father has shown the trial court erred in entering the judgment under attack.

To the extent that Father's complaint about getting more time to complete services could be read as an attack on the trial court refusing to continue trial, we say the following. His motion was oral. Being oral, it failed to preserve his complaint for review; motions to continue must be in writing. *See In re Marriage of Harrison,* __S.W.3d __, __, 2018 Tex. App. LEXIS 4201, at *30 (Tex. App.—Houston [14th Dist.] June 12, 2018, no pet. h.); *Weston v. Allison*, No. 02-09-00418-CV, 2010 Tex. App. LEXIS 6414, at *2-3 (Tex. App.— Fort Worth Aug. 5, 2010, no pet.) (mem. op.).

Father's sole issue is overruled.

*M.B.'s Appeal*

M.B. (Mother) challenges the legal and factual sufficiency of the evidence to support a finding that termination was in the children's best interest. According to Mother, the evidence failed in the following respects. First, the record showed that A.S. and H.C. had told several individuals that they wanted to return home. Second, no one testified with certainty that the behavioral problems of the children were attributable to their parents. Third, the children at bar were not the subject of physical abuse at the hands of Mother though she had abused the children of others. Fourth, Mother had completed all services required of her. Fifth, the future plans of the State for the children were unclear.

In reviewing whether the evidence is legally and factually sufficient to support termination, we apply the standards of review described in *In re K.M.L.*, 443 S.W.3d 101, 112-13 (Tex. 2014), and *In re K.V.*, No. 07-16-00188-CV, 2016 Tex. App. LEXIS 11091, at *6-8 (Tex. App—Amarillo Oct. 11, 2016, no pet.) (mem. op.). So too do we compare the evidentiary record to the factors itemized in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) when assessing whether termination favors the best interests of the child. We refer the parties to those cases for a discussion of the standards we apply and factors we consider here.

The trial court found that the evidence established three statutory grounds warranting the termination of Mother's parental rights. One involved Mother knowingly placing or allowing the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Another involved her engaging in conduct or knowingly placing

3

the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children. *See id.* § 161.001(b)(1)(E). The last one encompassed Mother failing to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children. *See id.* § 161.001(b)(1)(O). That each ground was supported by both legally and factually sufficient evidence is not something Mother questioned on appeal. *See In re T.C.*, No. 07-18-00080-CV, 2018 Tex. App. LEXIS 6769, at *13 (Tex. App.—Amarillo Aug. 23, 2018, no pet. h.) (mem. op.) (failure to attack the statutory grounds for termination is a tacit concession by the parent that sufficient evidence supports a finding that they occurred). More importantly, the evidence relevant to those grounds and illustrating that she endangered the physical and emotional well-being of the children as well as failed to comply with applicable court orders is relevant to the best interests of the children. *See In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). So, our analysis begins with Mother's tacit concession that the record evidence established she had endangered the children and failed to comply with court orders conditioning her recovery of the children. *In re T.C.*, *supra*.

Next, we note that B.H., the youngest of Mother's children, was eighteen months old when removed from the home and tested positive for methamphetamine. Evidence revealed that Mother had a history of abusing that controlled substance. Such history included her repeatedly testing positive for it after the child was removed. Those positive tests occurred on March of 2017, July of 2017, and October of 2017. Father also had problems with abusing methamphetamine and tested positive for the drug in March, July, and October of 2017. Given that final trial of the cause began in October 2017, the

4

upcoming event did little to assuage them from their ongoing desire to engage in the detrimental and illegal conduct.

As for Mother's compliance with the service plan, it required her to submit to random drug testing. On one occasion she refused to do so, her justification being her alleged promise to God to forgo cutting her hair. Another requirement obligated her to attend drug counseling and to report her use of drugs; she failed in both regards. Another component of the service plan obligated her to undergo psychological evaluation and comply with the ensuing recommendations. Though Mother submitted to such, her refusal to admit that she had done anything wrong resulted in the cessation of counseling. Moreover, she continued to maintain that she had done nothing to cause the State to remove her children.

Additionally, the appellate record contained evidence that she physically abused children other than those at bar but who were left in her care. The abuse consisted of her slapping a child in the face, striking him out of anger, grabbing the child with such force so as to leave "control" marks, and spanking him with a belt and sandal. Indeed, this treatment of the child led a State's witness to opine that the children at bar were at risk.[1]

Caretakers other than Mother also engaged in instances of abuse directed towards the children. One such instance concerned Mother leaving A.S. in the care of a convicted felon. According to A.S., the felon sodomized him (A.S.) while Mother was absent.

Other evidence revealed that when this termination action came for final hearing in October of 2017, 1) neither party had produced a negative drug screen for almost a year and 2) neither had submitted to a psychological evaluation. And, while Mother did

---

[1] Father had pled guilty to injuring a child and received probation.

exercise her visitation with the children, evidence revealed that she often violated rules set by the State during the sessions. So too did it appear that time spent often included watching movies or playing video games as opposed to active interaction between parent and child. Eventually, her visits had to be supervised by a counselor.

At the time of trial, two of the children, A.S. and H.C., resided together in a non-adoptive children's home. Plans were underway, though, that would place them with A.S.'s biological father who lived outside Texas. This is the same father who allegedly left Texas after being threatened with death by Mother. On the other hand, B.H., resided in a non-adoptive foster home, which home was subject to upcoming change.

A.S. and H.C. evinced signs of distrusting their foster parents and therapist. Such conduct indicated that they have had a neglectful past, according to the therapist. A.S. also had been diagnosed as developmentally delayed, passively defiant, and encountering problems with authority figures. The environment of both children at time of trial afforded them structure and supervision, two circumstances needed by A.S. and H.C. but missing in the home with Father and Mother. We also note that a counselor expressed concerns about the youngest child, B.H. His verbal skills were not appropriate for his age. These circumstances coupled with Mother's history of abusing methamphetamine and status as an addict raised concern for the children. As one witness testified about the children, "they'll never have a stable – a stable parent" because methamphetamine alters the user's state of mind and impedes their ability to provide for their children and maintain steady employment.

Not only had Mother failed to maintain steady employment but she had also engaged in the aforementioned instances of excessive physical discipline exposing all

6

children to risk. And, this is of particular concern since Mother refused to acknowledge that she did anything wrong to warrant either intervention by the State or the pending criminal prosecution against her for injuring a child.[2]

Other evidence indicates that Mother improved. Yet, short-term improvement does not necessarily establish long-term success, or a fact-finder could reasonably conclude. As we have acknowledged for some time, past conduct can be indicative of future conduct as well. *See In re R.L.M.,* No. 07-07-00489-CV, 2008 Tex. App. LEXIS 7963, at *6 (Tex. App.—Amarillo Oct. 17, 2008, no pet) (mem. op.) (so acknowledging).

That the children may have expressed a desire to remain with Mother is informative but not determinative. It must be remembered that they are children. Being children they do not necessarily make informed or rationalized decisions. And, as illustrated by wives who return to husbands who beat them, people can grow an unhealthy attachment to those whom they should avoid.

In sum, we conclude that the entirety of the record before us contains evidence both legally and factually sufficient to support the finding that termination of Mother's parental rights was in the best interests of the children. Having overruled this issue and that raised by Father, we affirm the orders terminating their parental rights.

Brian Quinn
Chief Justice

---

[2] Mother invoked her right against self-incrimination to most every question posed her at trial. Those questions included some delving into the charge of injuring a child and her drug abuse. By so invoking that right, she enabled the fact-finder to draw adverse inferences against her regarding those matters. *See In re C.J.F.*, 134 S.W.3d 343, 352-53 (Tex. App.—Amarillo 2003, pet. denied) (stating that the refusal to answer questions by asserting the privilege against self-incrimination is relevant evidence from which the fact-finder in a civil action may draw whatever inference is reasonable under the circumstances).